# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Travis Day,                                          :
                      Petitioner          :
                                 :
          v.                                       :    No. 305 C.D. 2025
                                 :    SUBMITTED:  June 16, 2026
Pennsylvania Commission                       :
on Crime and Delinquency,                     :
                      Respondent       :


BEFORE:   HONORABLE LORI A. DUMAS, Judge
                HONORABLE STELLA M. TSAI, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED:  August 12, 2026**

Petitioner Travis Day petitions for review of the final decision of Respondent Pennsylvania Commission on Crime and Delinquency upholding his expulsion from the Pennsylvania Sheriff and Deputy Sheriff Education Training Academy for disciplinary infractions.  We affirm.

The facts of the matter are as follows.  In July and August 2018, Petitioner was employed as a deputy sheriff by the Westmoreland County Sheriff's Office and enrolled in the Academy.  The Academy is operated by the Penn State Justice and Safety Institute (JASI) for the Commission and the Sheriffs and Deputy Sheriffs Education and Training Board.[1]  In August 2018, immediately after an

---

[1] The Board is responsible for administering training for sheriffs and deputy sheriffs, including "[e]stablish[ing], implement[ing] and administer[ing] requirements for the minimum courses of study and training for sheriffs and deputy sheriffs," and "[m]ak[ing] rules and regulations and perform[ing] other duties as may be reasonably necessary or appropriate," 44 Pa.C.S. § 7424(2) **(Footnote continued on next page…)**

incident in which Petitioner failed to remove a firearm (a shotgun) and ammunition from a hotel room when checking out,[2] JASI and the Commission expelled Petitioner from the Academy. A letter to Petitioner from JASI explained his expulsion as being based upon several incidents, including Petitioner's sleeping in class, for which Petitioner had previously received a verbal warning; calling a classmate a "snitch," for which Petitioner had previously received a written warning; the shotgun incident; and harassing a female classmate.

Petitioner appealed his expulsion to the Board, which administers the the Academy "with the review and approval of the [C]ommission." 44 Pa.C.S. § 7424(1). The Board denied Petitioner's appeal and Petitioner requested a hearing, which was assigned by the Acting Executive Director of the Commission to a Hearing Officer. During a video hearing, the Commission presented the testimony of several individuals associated with the Commission and the Academy. Petitioner cross-examined the Commission's witnesses but did not testify himself. The Hearing Officer issued a proposed adjudication and order recommending that the Board's decision be reversed and that Petitioner be reinstated. With respect to the shotgun incident, the Hearing Officer stated that "without anyone . . . being aware" of the incident, he could not say that the incident was "unprofessional conduct," defined as conduct which "reflect[s] poorly upon the Academy and the Sheriffs of

---

and (12). The Board provides education and training by "[a]pprov[ing] . . . any school which may be utilized to comply with the educational and training requirements . . . ." 44 Pa.C.S. § 7424(5). Board regulations provide that the Board or school "may establish reasonable rules governing attendance and conduct expected of a deputy sheriff who is attending training . . . ." 37 Pa. Code § 421.5(a). "[D]epartures from the expected standards of conduct may result in the Board's imposition of disciplinary sanctions, which may include expulsion from the training . . . ." 37 Pa. Code § 421.5(b).

[2] Students at the Academy lodged at a Ramada Inn in State College.

the Commonwealth." Proposed Adjudication at 12-13, Reproduced Record "R.R." at 58a-59a. The Hearing Officer found that the Board failed to establish that Petitioner had harassed a female deputy. *Id.* at 13-15, R.R. at 59a-61a. The Hearing Officer stated that at most the Board had established that Petitioner had slept in class and called a fellow deputy a "snitch," resulting in warnings. *Id.* at 15, R.R. at 61a. The Hearing Officer opined that without additional grounds beyond the sleeping and name-calling incidents, the Board's decision to dismiss Petitioner was "manifestly unreasonable" and that the Board had abused its discretion. *Id.*

The Commission, through its Chief Counsel, filed a brief on exceptions to the Hearing Officer's recommendation and Petitioner filed a response. The now-Executive Director issued a final decision rejecting the Hearing Officer's proposed adjudication and order, without findings and reasons for the rejection. Petitioner appealed the Executive Director's final decision to this Court, which vacated and remanded because it failed to conform to the reasoned decision requirement of Section 507 of the Administrative Agency Law, 2 Pa.C.S. § 507.

The Executive Director issued a new final decision, again rejecting the recommended adjudication and order of the Hearing Officer, finding that Petitioner

> engaged in unprofessional conduct by leaving a shotgun and ammunition unsecured in a hotel room after he checked out. This act clearly reflected poorly upon the image of the Board and the Sheriffs of the Commonwealth and placed the Academy in an embarrassing position because it:

> - Was known to hotel staff, who certainly knew [Petitioner's] identity and affiliation with the . . . Academy.

3

- Required hotel staff to restore safety that had been compromised by the reckless and negligent action of a law enforcement officer.

- Was known to State College Police Department to whom the firearm and ammunition were turned over.

- Increased the chance of serious bodily harm or death to hotel staff and hotel guests.

- Surpassed the acts of sleeping, eating[,] or smoking in class, and illegal parking, which are examples of unprofessional conduct listed in the Sheriff [sic] and Deputy Sheriffs Training Code of Conduct contained within the . . . Academy Participant's Manual.

- Was another in a series of [Petitioner's] unacceptable behavior [sic] that had included sleeping in class, calling a fellow law enforcement officer a "snitch," and a summary conviction of disorderly conduct.[3]

- Qualified as a breach of conduct or demeanor subject to Academy Disciplinary Action including dismissal.

Exec. Dir.'s Letter of Feb. 10, 2025 (footnotes omitted). A new petition for review to this Court ensued.

---

[3] Notably, there is no finding concerning the initial allegation of harassment against a female deputy, which was offered as part of the rationale for expulsion and rejected by the Hearing Officer.

Petitioner was charged with disorderly conduct, unreasonable noise, a summary offense, for an incident which occurred on July 16, 2018. Docket Sheet, *Com. v. Day* (C.C.P. Centre, No. CP-14-CR-0001771-2018, printed April 23, 2020); Board Ex. 42, R.R. at 565a-73a. Petitioner pled *nolo contendere* to that charge on December 11, 2019. *Id.* at 566a.

Under a different docket number, Petitioner was charged with harassment, a summary offense, for an incident which occurred on August 10, 2018. Docket Sheet, *Com. v. Day* (Magisterial Dist. Judge 49-3-05, No. MJ-49305-NT-0000406-2018, printed Oct. 3, 2018); Board Ex. 36, R.R. at 558a-59a. That charge was withdrawn. *Id.* at 558a.

On appeal, Petitioner presents the issue of whether the Executive Director's decision was supported by substantial evidence. Petitioner's Br. at 5. Petitioner's brief generally addresses each of the specific instances of misconduct found by the Executive Director and urges the Hearing Officer's view of the evidence as being correct, asking that we reverse the Executive Director's rejection of the Hearing Officer's proposed decision. Petitioner does not dispute that the shotgun and ammunition were left in the hotel room but contends that the shotgun was not operable based upon his own representation made to hotel staff and subsequently relayed to Academy staff. This contention seemingly is meant to discount the Executive Director's finding that the act of leaving the shotgun "[i]ncreased the chance of serious bodily harm or death to hotel staff and hotel guests." Petitioner, quoting the Hearing Officer, also contends that there is no evidence that the incident "reflected poorly upon the image of the Board and the Sheriffs of the Commonwealth" or "has place[d] the Academy or the participant's sheriff in an embarrassing position by his conduct" because the incident passed "without anyone—including the family that had next checked into the room—being aware of the incident." Petitioner's Br. at 18 (quoting Hearing Officer's Proposed Adjudication at 13, R.R. at 59a).

With regard to the summary conviction of disorderly conduct, Petitioner argues that the fact of the conviction proved nothing more than that he had committed the elements of the offense. He notes that the conviction did not prove the harassment allegation. Petitioner insists that the Hearing Officer correctly found that only the sleeping and name-calling incidents were proven and that the dismissal was manifestly unreasonable. Petitioner's Br. at 21-22.

5

The Commission[4] responds that "the record taken as a whole, including witness testimony and the statements that are part of the record, consists of [sic] substantial evidence to support the Board's decision." Commission's Br. at 11. The Commission argues that Petitioner's abandonment of the shotgun in the hotel room caused alarm, despite the fact that it was not loaded, and represented a "significant enough event" to require notification of hotel management, relocation of the hotel room's new occupants, and the involvement of the local police. This, the Commission argues, resulted in notoriety to the Academy.

Under the Academy's Code of Conduct,

> Unprofessional conduct is grounds for sanction and the imposition of appropriate disciplinary action. Unprofessional conduct is defined as on or off campus conduct that reflects poorly upon the image of the Board and the Sheriffs of the Commonwealth. Examples include: talking in the classroom; disrespect to instructors; *sleeping*, eating, or smoking *in class*; disrupting other activities occurring on the training site; false fire alarm; vandalism; illegal parking; lying to training delivery or Board staff or any other person; refusal to cooperate with

---

[4] The Commission's brief fails to conform to Pennsylvania Rule of Appellate Procedure 124, Pa. R.A.P. 124, concerning the form of documents, including the requirements that documents be prepared on white backgrounds and that lettering shall be clear and legible and no smaller that 14 point in the text. The entirety of the Brief appears to have been a draft prepared in Microsoft Word, printed out with the "show comments" function of that software activated, complete with editorial comments showing in the margins.

More troublingly, the short argument section of the brief omits citation to pertinent authorities, including the legislation, regulations, and policies authorizing disciplinary action against students at the Academy, in violation of Rule 2119(a), Pa. R.A.P. 2119(a). Together, these lapses are of a piece with the Executive Director's previous failure to render a reasoned decision.

Nevertheless, these errors do not substantively hinder appellate review in this matter, so we exercise our discretion and consider the merits of the arguments raised in a case that is quite aged, in part by the Executive Director's failure to render a reasoned decision.

staff investigations; and ***other criminal offenses committed on or off the training site***.

Academy Code of Conduct § VI.A (emphasis supplied), R.R. at 507a. Section 9.3.a of the Academy's Manual states that "[a]ny breach of conduct or demeanor is subject to Academy disciplinary action—the result of which may include dismissal." Academy Participant's Manual § 9.3.a, R.R. at 499a. "Prohibited behaviors" include "[p]lacing the Academy or the participant's sheriff in an embarrassing position"; "[d]isplaying carelessness, lack of alertness, or inattention to duty, to include sleeping in the classroom"; and "[v]iolating any public law or ordinance (felony, misdemeanor, or summary)." Academy Participant's Manual § 9.3.b.4, b.11, and b.16, R.R. at 499a-500a.

Petitioner essentially asks that we reweigh the evidence, accept the Hearing Officer's characterization thereof, and reverse on that basis. However, such a result is beyond our scope of review. The Executive Director functioned in this case "as the ultimate-fact finder, [who] may accept or reject testimony of any witness in whole or in part" and "we are bound by [his] credibility determinations and cannot change them on appeal even if we were inclined to do so." *Suber v. Pa. Comm'n on Crime & Delinq.*, 885 A.2d 678, 684 (Pa. Cmwlth. 2005). As the factfinder, the Executive Director was not bound by the decision of the hearing officer. *Fisler v. State Syst. of Higher Educ., Ca. Univ. of Pa.*, 78 A.3d 30, 42 (Pa. Cmwlth. 2013) (chancellor of university was not bound by hearing officer's decision); *Realmuto v. Dep't of Transp.*, 637 A.2d 769, 771 (Pa. Cmwlth. 1994) (Secretary of Transportation, as ultimate fact finder, is not bound by proposed report of hearing examiner); *Fitz v. Intermediate Unit #29*, 403 A.2d 138, 141 (Pa. Cmwlth. 1979) ("Absent a requirement that the agency head is bound by the decision of the hearing examiner, the agency head is free to make his own determination and

7

findings subject to review by this Court.").  The party prevailing below is entitled to have the Court view the evidence in the most favorable light and to all reasonable inferences that may be derived therefrom.  *MKP Enters., Inc. v. Underground Storage Tank Indemnification Bd.*, 39 A.3d 570, 581 (Pa. Cmwlth. 2012).  That the evidence could support the finding of a different version of events or that Petitioner views the testimony differently is not grounds for reversal if substantial evidence supports the Executive Director's findings.  *See Tapco Inc. v. Unemployment Comp. Bd. of Rev.*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994) (Unemployment Compensation Board of Review resolved conflicts of testimony and issues of credibility in favor of claimant after referee had denied benefits).

Turning to the evidence of record, David M. White, an employee at JASI who inspected the shotgun and investigated the incident, testified that the hotel was required to remove a family from the hotel room; that there was ammunition of various types in a bag found with the shotgun; that the 12-guage rounds found with the shotgun could be used with the shotgun; that leaving the shotgun was a safety issue; that Petitioner did not contact JASI; and that without testing the shotgun on a firing range, he could not tell whether it was operable.  Notes of Testimony "N.T." at 123-26, Certified Record "C.R." at 301a-04a.  Edgardo Santiago, an employee of the hotel, testified that a family with children was required to be moved when Petitioner reported that the shotgun had been left under the mattress and that staff members retrieved it, and that staff later re-cleaned the room and found the bag of ammunition behind the curtains.  N.T. at 210, C.R. at 388a.  Based upon this evidence, we cannot say that the Executive Director's findings concerning the safety risk posed to hotel staff and guests were not supported by substantial evidence. Further, given that hotel staff and the local police were involved in securing the

8

shotgun and ammunition, there is evidence that the matter did not pass without anyone being aware, as found by the Hearing Officer.

Petitioner, although disputing its significance, does not contest the finding that he was convicted of disorderly conduct. He concedes that there is evidentiary support that he called another deputy a snitch and that he slept in class.

The only question before us is whether the findings of the Executive Director are supported by substantial evidence. We conclude that they are.

In light of the foregoing, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Travis Day,             :
         Petitioner      :
                      :
         v.             :   No. 305 C.D. 2025
                      :
Pennsylvania Commission      :
on Crime and Delinquency,     :
         Respondent    :

## **O R D E R**

AND NOW, this 12th day of August, 2026, the final decision of the Respondent, Pennsylvania Commission on Crime and Delinquency is AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita